922 So.2d 631 (2006)
Joseph P. RASPANTI
v.
LIBERTY MUTUAL INSURANCE COMPANY.
No. 05-CA-623.
Court of Appeal of Louisiana, Fifth Circuit.
January 31, 2006.
*633 Patrick H. Hufft, Hufft & Hufft, A.P.L.C., New Orleans, Louisiana, for Plaintiff/Appellant.
Marvin H. Olinde, Metairie, Louisiana, for Defendant/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Joseph Raspanti, plaintiff-appellant, from a jury verdict in his favor, and against his underinsured motorist insurer, Liberty Mutual Insurance Co., defendant-appellee, in this rear-end automobile collision case. The evidence showed that a phantom vehicle pulled out from a side street causing Raspanti to stop. He avoided hitting the phantom vehicle, but was struck from the rear by a vehicle driven by John McDuff. The jury determined that the phantom vehicle was 10% liable and McDuff 90% liable. It awarded Raspanti $14,350 in past medicals, $25,000 in future medicals, and $50,000 in general damages. Liberty Mutual was given a credit of $100,000, the limit of liability insurance carried by McDuff, against the portion of damages caused by McDuff. It was adjudged liable for all of the damages attributable to the phantom vehicle. For the following reasons we affirm that verdict.
Raspanti now appeals and raises several assignments of error. The first two relate to the award of $50,000 in general damages which he contends is inadequate. The third relates to what he urges was improper use of a prior deposition during trial. The final assignment concerns the 10% apportionment of fault to the phantom vehicle which he claims is too low.
We first address the question of the apportionment of fault. The evidence of the particulars of the accident is somewhat muddled. It is clear that Raspanti was traveling on a boulevard in the right lane when he encountered slowed or stopped traffic at a controlled intersection. He shifted into the left lane and was going 25 to 30 MPH when he noticed a car entering the boulevard from a side street on his right. Raspanti said that he applied his brakes and managed to stop and avoid hitting the entering car, but was then rear-ended by McDuff. It is not clear, however, that the car actually came out as far as the left lane. Jenny Couchis was driving in the right lane and to the rear of Raspanti, and testified that she saw the entire incident. Her version was that the car came out into right lane of the boulevard and turned right but she was not sure if it actually went into the left lane. She noted that it did not pose any danger to her in the right lane, and that the driver drove off probably unaware that an accident had occurred. Neither is it clear how suddenly Raspanti stopped. He testified that it was not a totally sudden stop, but it was more than a normal one and said that on a scale of one to ten it was an eight. In either case Raspanti contends that the phantom vehicle should have been found 50% at fault.
Apportionment of fault is a factual question and as such is governed by the manifest standard of review on appeal. Watson v. State Farm, 469 So.2d 967, 974 *634 (La.1985). Under that standard the inquiry is not whether this court, had it been sitting as the trier of fact, would have made a different finding, but instead whether the jury's finding was reasonably supported by evidence of record in the context of the entire record. Id. That court also set forth a number of criteria to be used by the trier of fact in determining the relative fault of multiple tortfeasors, such as the awareness or inadvertence of the acts, the severity of the risks, the significance of what was sought by the conduct, the capacities of the actors, whether superior or inferior, and any other factors which might cause a person to act in haste. In the present case it is clear that there was evidence to show that the phantom vehicle had room to turn into the right lane without putting Ms. Couchis in any danger, but that it appeared to be entering at least a portion of the left lane, thus causing Raspanti to fear a collision and so stop. It is also clear that McDuff must have been following too close, being inattentive, or both, and was unable to stop before hitting Raspanti. Considering all of the above factors we are unable to say that the jury's apportionment of fault at 10% for the phantom vehicle and 90% for McDuff is manifestly erroneous, and therefore must affirm that finding.
The next question is whether a deposition given by Raspanti was properly used to impeach his trial testimony. The issue being addressed at the time the deposition was used was Raspanti's version of the accident, especially in regard to when he first saw the phantom vehicle and the abruptness of his stop. Appellant does not dispute that a prior deposition may be used to contradict or impeach testimony given by a witness as per La.Code Civ. Pro. Art. 1450. What he asserts is that defense counsel did not adequately point out to Raspanti the statements in the deposition which were potentially inconsistent with his trial testimony and allow him to admit the fact as required by La.Code of Evidence Art 613. He further argues that much of the deposition was improperly read to the jury by counsel because those portions did not contain any inconsistent statements. We disagree with these assertions.
The transcript shows that Raspanti was given a copy of the deposition and his attention was directed to those portions which defense counsel deemed inconsistent. He was allowed to explain his prior testimony in great detail and attempted to show that there were in fact no inconsistencies. Further, to the extent that portions of the deposition read to the jury were not inconsistent with his trial testimony, he suffered no prejudice from the jury hearing them. We therefore reject this assignment.
The final two matters concern the general damage award of $50,000. Raspanti contends first that the back and neck injuries he suffered in the accident should have resulted in a substantially higher award, and second that the general damage award was disproportionately low when compared to the awards of $14,300 for past medicals and $25,000 for future medicals.
Damage awards are reviewed under the abuse of discretion standard. Wainwright v. Fontenot, XXXX-XXXX (La.10/17/00), 774 So.2d 70. Moreover, because the amount of damages is essentially a factual finding, such findings are entitled to great deference on review. Id. Thus the role of the appellate court is not to decide what it considers an appropriate award, but rather to review the much discretion exercised by the trier of fact. Id. In conducting this review, moreover, the court must take into account the particular impact which the particular injuries have *635 had on the particular plaintiff. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). It is only after a court has, for articulable reasons, determined that an award is improper that it may look to other awards in comparable cases for guidance as to what might be an appropriate award. Id.
The accident in question here occurred in July of 2000. There is no question that the jury found that Raspanti was injured in the accident. The issue here is thus how severe were those injuries and what effect did they have on plaintiff's life. There is no dispute that Raspanti injured his neck in a 1996 accident. His medical reports showed that he had two ruptured discs as well as narrowing of the spinal canal for which he was treated conservatively until the 2000 accident. Indeed, on June 12, 2000, a few weeks before the present incident, he was examined by Dr. James LaBorde, an orthopedic surgeon, for continuing neck problems. This doctor testified that he took over this patient with chronic pain management problems from Dr. Landry, another doctor in his group who had recently relocated. He said that Dr. Landry had offered spinal surgery in 1999 to relieve pain in his neck and shoulder and numbness and tingling in the right fingers, but plaintiff had declined. Dr. LaBorde diagnosed his condition as chronic neck pain with nerve root involvement and prescribed pain medication for his continuing chronic neck and shoulder problems.
After the July 2000 accident Dr. LaBorde continued to treat plaintiff. X-rays taken shortly after the accident showed the pre-existing discs problems and narrowing in the spinal canal. The doctor's impression then was that plaintiff had suffered a neck strain superimposed on pre-existing arthritic conditions. In September plaintiff returned complaining of continuing neck pains and also of lower back pains. A neurological exam of the back was normal, but X-rays revealed arthritic changes on the lower back. The doctor thought these findings showed a degenerative condition which was exacerbated by the accident. He continued to treat plaintiff until January 2001, and by then had given him two cortisone injections in the right shoulder. During this period plaintiff was also doing physical therapy.
In February of 2001 plaintiff saw Dr. Courtney Russo, an orthopedic surgeon. His initial examination showed no neurological problems in the upper extremities and no loss of muscle strength. He ordered MRIs of the neck and back, which he reviewed at a subsequent visit. They showed degenerative changes in the neck which were compatible with studies prior to the accident. In the lumbar region he diagnosed degenerative changes and noted a disc bulge at the L5-S1 level. He thought that this bulge was the result of the 2000 accident. Dr. Russo recommended lumbar steroid injections for the pain but plaintiff rejected this treatment.
On April 4, 2002, plaintiff saw Dr. Bradley Bartholomew, a neurosurgeon, for continuing neck and intermittent back pain, and for concerns about atrophy in his right shoulder. This doctor reviewed the previous MRIs and found the cervical discs problems in the neck as well as the lumbar disc bulging which he described as a ruptured disc. On a subsequent visit in November 2002 he noted the atrophy in the right shoulder. His opinion was that the 2000 accident exacerbated the neck and shoulder problems and caused the lower back disc problem. He discussed surgery with plaintiff, but this was declined. On cross examination this doctor was asked if the cervical condition shown in a 1997 MRI was consistent with the pains and atrophy *636 presently existing, and he replied that they were.
The defense sent plaintiff to Dr. Robert Applebaum, a neurosurgeon, for an independent medical examination. Dr. Applebaum had in fact treated plaintiff for his neck problems resulting from the 1996 accident during 1997 and 1998. He testified that the 1997 MRI revealed the cervical disc problems and the narrowing of the spinal canal, as well as weakening in the right arm. He recommended that plaintiff have a myelogram and CAT scan done to see whether surgery would be appropriate. However, plaintiff ruled out surgery so there was no point in doing these studies. In March of 1998 he saw plaintiff again for increased pain. Again surgery was discussed but declined unless the pain became intolerable.
On March 25, 2003, Dr. Applebaum saw plaintiff at the defense's request. Plaintiff was then complaining of pain in the right side of the neck and weakness in the right arm, as well as lower back pain. He reviewed the MRIs done after the 2000 accident and found the cervical area problems previously diagnosed. As to the lumbar region his interpretation of that MRI was that it showed some degenerative changes due to aging, but no ruptured disc. His opinion was that the 2000 accident probably caused a 50% exacerbation of the neck problems.
It was also shown at trial that plaintiff had undergone several surgeries for removal of his colon and was fearful the anesthetics during any surgery would complicate that problem. He suggested that he feared that steroid injections might also have negative consequences on those previous problems. However, several of the treating doctors were of the opinion that steroids would have no adverse effects, and it was shown that Dr. LaBorde had given him two such injections with no adverse results. The defense argued that plaintiff's failure to at least take the injections showed that he had failed to take reasonable steps to mitigate his damages.
Plaintiff testified that he had been working since the 2000 accident and had thus made no claim for lost wages. He said that his pain had worsened and that his leisure activities had been further limited since the 2000 accident.
Based on the above evidence the jury obviously found that plaintiff had suffered an exacerbation of his prior condition requiring past and future medical treatments. Those findings are certainly reasonable in light of the entire record of the case, and almost all of the doctors were in agreement with this. Plaintiff asserts further that he suffered a ruptured disc in his lower back and cites cases in which awards of more than $50,000 were deemed appropriate on appeal. However, Dr. Applebaum stated that in his opinion there was no ruptured disc in that area, but only a degenerative condition brought on by age. It is also true that plaintiff rejected steroid treatments which most doctors recommended for pain, and also stated that these treatments would not adversely affect his prior intestinal problems. Considering all of these factors, we are unable to articulate any reasons why the jury abused its much discretion in fixing the general damage award at the amount that it did. That being so, we must affirm that award.
Plaintiff's final argument about the general damage award is that it is inconsistent with the awards for past and future medicals. The question of inconsistent special and general damages was presented in Wainwright v. Fontenot, supra. There the court noted that there is no bright line rule that such damages must be compatible. Instead it ruled that the analysis to be used is the same as any analysis of *637 damages, i.e. whether there is an abuse of the much discretion given to finders of fact. Here we have already determined that we are unable to articulate any reasons why the award of $50,000 for general damages is an abuse of discretion. We must therefore reject plaintiff's disproportion argument as well.
For the foregoing reasons the judgment of the district court is hereby affirmed.
AFFIRMED.