ROBERT BELL AND CHERYL BELL

VERSUS

DANNY HEMBREE, STILLWATER
SOLUTIONS, LLC, ALLSTATE INSURANCE
COMPANY, AND
XYZ INSURANCE COMPANY

NO. 21-CA-64

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 786-167, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

September 29, 2021

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED**
 **HJL**
 **JGG**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy Clerk, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ROBERT BELL AND CHERYL BELL
    Ron A. Austin
    Catherine Hilton

COUNSEL FOR DEFENDANT/APPELLEE,
DANNY HEMBREE & ALLSTATE INSURANCE COMPANY
    Andrew Decoste

**LILJEBERG, J.**

Plaintiffs appeal the trial court's July 28, 2020 judgment finding the plaintiff driver 30% at fault for the motor vehicle accident in this case. They also contend that the trial court's award of general and special damages was abusively low. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

On July 31, 2018, plaintiffs, Robert and Cheryl Bell, filed a Petition for Damages against defendants, Danny Hembree and Allstate Insurance Company ("Allstate"), alleging that Mr. Hembree was solely at fault for a motor vehicle accident that occurred on or about August 1, 2017, in the parking lot of a McDonald's restaurant in Metairie, Louisiana. Mr. and Mrs. Bell both contend that they suffered personal injuries as a result of the accident and that Mr. Hembree and his insurer, Allstate, are liable for their damages. On October 5, 2018, Mr. Hembree and Allstate filed an Answer denying that Mr. Hembree was at fault for the accident and asserting that Mr. Bell was at fault.

Trial of this matter was held on July 28, 2020. The parties stipulated that: 1) the accident occurred on August 1, 2017, during daylight hours in the McDonald's parking lot located at the intersection of Airline Drive and Labarre Road; 2) Mr. Hembree's insurance policy with Allstate was in effect at the time of the accident; and 3) the rear passenger side bumper of Mr. Hembree's vehicle came into contact with the front driver's side bumper of the Bell vehicle.

At trial, Cheryl Bell testified that around mid-day on August 1, 2017, she went to McDonald's with her husband, daughter, and two granddaughters. After eating in the restaurant, they got into her Infiniti QX56, with Mr. Bell driving, Mrs. Bell in the front passenger seat, and their daughter and granddaughters in the back seat. According to Mrs. Bell, Mr. Bell backed the car out of an angled parking space, stopped, and was about to move forward when she saw a white truck start

backing out toward them. She stated that she leaned over and blew the horn, but the rear passenger side of the truck came into contact with her vehicle. Mrs. Bell testified that she did not know where the truck was parked before it struck her vehicle. She stated that when she told the driver of the truck, Danny Hembree, that she was blowing the horn, he said he did not hear it because he was wearing earbuds. Mrs. Bell testified that she has a good memory, but Mr. Bell has a tendency to forget.

Mrs. Bell further testified that she was thrown into the seat and her head hit the headrest when the impact occurred, but she did not feel any pain until a few days after the accident. She initially took Tylenol and Aleve but the pain did not go away, so she went to Louisiana Primary Care Consultants ("LPCC") about four to five weeks after the accident. Mrs. Bell stated that she had pain in her neck, shoulders, and upper back, and she had headaches. She treated with doctors at LPCC for about five months, but she stopped going to the doctor in January of 2018 because she was feeling better. Mrs. Bell admitted that she was able to walk almost a mile every day after the accident.

Additionally, Mrs. Bell testified that her car was damaged in the accident, but she did not see any damage to Mr. Hembree's truck. She stated that her insurer paid for her repairs, but she had to pay a $500 deductible. Mrs. Bell indicated that the total cost of the repairs was about $800, though no invoice for repairs or photographs of her vehicle were admitted into evidence.

Robert Bell testified that he is 76 years old and that his memory is "pretty bad." He stated that the accident occurred in the summer of 2017 and that it was evening time but still light outside. After he and his wife, daughter, and granddaughters left McDonald's, he got into the driver's seat of his wife's car, which was parked in an angled parking space. Mr. Bell testified that once he backed the car completely out of the parking space and was putting it in gear to go

forward, a white truck started coming out. He did not pay attention to where the truck was before this time. Mr. Bell said he did not blow the horn because he thought the truck would stop, but his wife reached over and blew the horn. After the impact, he got out of the car and spoke with the driver of the white truck, Mr. Hembree, who was wearing earbuds. Mr. Hembree told him that he did not see their vehicle or hear the horn. Mr. Bell testified that there was no damage to Mr. Hembree's vehicle.

Mr. Bell further testified that he did not feel any pain at the scene, but he started to have neck and lower back pain a couple of days later so he started taking Advil. He saw a doctor at LPCC about a month after the accident and was treated for four to five months. When he finished treatment, his neck and lower back pain were not completely gone but had eased up a lot. Mr. Bell admitted that he was in a prior car accident in 2016 and was treated at LPCC for his injuries.

Danny Hembree testified that on August 1, 2017, at about 3:15 p.m., he was driving his Toyota Tundra truck and was backing out of an angled parking space when the accident occurred. He stated that he checked his three rearview mirrors and his rear camera before backing up. According to Mr. Hembree, he glanced a couple of times at the car parked to his left because it was parked close to his truck. When he looked back at his rearview mirror, he saw something black behind him, so he instantly applied his brakes and stopped. Mr. Hembree stated that he did not know whether his vehicle hit the Bell vehicle or whether the Bell vehicle hit his vehicle. He stated that he did not even feel an impact and did not know that the vehicles made contact until he got out of the car. He estimated that he was about three-fourths of the way out of the parking space when he applied his brakes. According to Mr. Hembree, the black vehicle driven by Mr. Bell either came from around the building or from off the street. When he saw the black vehicle, it was

"pretty straight" in the driving lane but slanted to the right as if it was going into another parking spot.

Mr. Hembree testified that he was not on the phone and was not wearing earbuds at the time of the accident. He stated that there was nothing on his truck that blocked his view behind him or to the side. Mr. Hembree denied telling Mrs. Bell that he did not hear the horn because he was wearing earbuds. He testified that he has Bluetooth speakers in his truck but has never owned a Bluetooth headset and was not wearing earbuds or a headset on the day of the accident. Mr. Hembree indicated that there was no damage to his vehicle and he did not see any noticeable damage to the Bell vehicle.

Dr. Ashfaq Qureshi was accepted as an expert in musculoskeletal medicine and physical medicine and rehabilitation. He is employed by LPCC, which specializes in the treatment of accident victims. Dr. Qureshi testified that he saw Mrs. Bell on September 1, 2017, when she reported that she had been in an automobile accident and that she was having neck, bilateral shoulder, upper back and mid-back pain, as well as some headaches and nausea. Mrs. Bell indicated that she had been taking Tylenol. He prescribed muscle relaxers and therapy for her. Dr. Quereshi noted that doctors regularly rely on the history given by the patient. He admitted that Mrs. Bell's complaints of pain at the September 1, 2017 visit were only subjective. No objective findings were noted.

According to Dr. Qureshi, Mrs. Bell returned to LPCC and saw Dr. Martinez on September 26, 2017. At this visit, she rated her neck pain as nine out of ten on the pain scale, her shoulder pain as a five out of ten, and her mid-back pain as ten out of ten. The doctor noted spasm in her cervical, trapezius, and thoracic areas, which are objective findings. Dr. Qureshi indicated that the pain scale is totally subjective.

On October 24, 2017, Mrs. Bell returned to see Dr. Martinez. She reported her neck pain as six out of ten, her shoulder pain as seven to eight out of ten, and her upper and mid-back pain as seven to nine out of ten. Spasms at the cervical and trapezius areas were noted. Mrs. Bell's next doctor visit was December 11, 2017, when she saw Dr. Qureshi and reported that her neck and shoulder pain had improved, but her upper back and mid-back pain were the same. No spasm was noted at this visit. Mrs. Bell returned on January 9, 2018, and she saw Dr. Sabatier. She reported the pain in her neck, upper back, and mid-back as zero out of ten, and she was discharged.

Dr. Qureshi testified that Mrs. Bell's neck, shoulder, and back pain were more probably than not related to the accident. Her bill from LPCC totaling $2,065 was admitted into evidence. However, Mrs. Bell's medical records were not admitted into evidence.

Mr. Bell's first visit at LPCC after the accident was also September 1, 2017, and he saw Dr. DeLoach. Mr. Bell complained of pain in his neck, lower back, and shoulder, as well as headaches.[1] He had spasms in the cervical, trapezius, and lumbar areas. Mr. Bell informed the doctor about the August car accident and indicated that he hit his head on the headrest. Dr. Qureshi testified that Mr. Bell was diagnosed with a closed head injury based on the report that he hit his head on the headrest and subsequently had headaches. According to Dr. Qureshi, a handwritten report in the records indicates Mr. Bell stated that when the accident occurred, he was stopped and then struck at the front by a truck. However, Dr. Qureshi also stated that a typed report indicates Mr. Bell said he was the driver of a vehicle backing up when he was struck at the front by another vehicle backing up.

Mr. Bell returned to LPCC for a doctor visit on September 26, 2017, and he saw Dr. Sabatier. Mr. Bell did not mention that he was still having headaches. He

---

[1] Mr. Bell also complained of bilateral knee pain, but he indicated it was unrelated to the accident.

rated his neck pain as eight out of ten, and his lower back pain as six out of ten. The doctor noted spasms in the cervical, thoracic, and lumbar spine.

Mr. Bell's next doctor visit was October 24, 2017, and he saw Dr. Qureshi. Mr. Bell rated his neck and lower back pain as six out of ten on the pain scale, but no spasm was noted. Following that visit, he returned and saw Dr. DeLoach on December 11, 2017. He reported neck pain as eight out of ten and lower back pain as seven out of ten, and he exhibited spasms in the cervical, trapezius, and lumbar areas. Mr. Bell returned for a doctor visit on January 9, 2018, and saw Dr. Sabatier. He reported neck pain as one out of ten and lumbar pain as zero out of ten. No spasm was noted. Mr. Bell was discharged from treatment at this visit.

Dr. Qureshi testified that the records indicate Mr. Bell reported a previous accident in 2016, with injuries to his neck and back, and he was treated at LPCC for seven months. His last day of treatment at LPCC for that accident was June 15, 2017, when he reported neck and lower back pain as eight out of ten on the pain scale.

Dr. Qureshi testified that it was more probable than not that Mr. Bell's neck, lumbar spine, shoulder, and closed head injuries were related to the August 1, 2017 accident. The bill from Mr. Bell's treatment at LPCC totaling $1,505 was admitted into evidence. However, no medical records for treatment after the August 1, 2017 accident were admitted. The only medical records admitted regarding Mr. Bell consist of three "Re-Evaluation" reports dated December 16, 2016, January 30, 2017, and June 15, 2017, prior to the accident at issue in this case.

After trial concluded on July 28, 2020, the trial court rendered a judgment that same day, stating that due to the conflicting testimony and lack of physical evidence, it found both parties were negligent in causing the accident. The trial court apportioned 70% of the fault to Mr. Hembree and 30% of the fault to Mr. Bell. The trial court awarded damages in the amount of $1,000 to Mr. Bell and

$1,500, "plus $500 for property damage" to Mrs. Bell. Plaintiffs appeal this judgment.

## LAW AND DISCUSSION

On appeal, Mr. and Mrs. Bell set forth three assignments of error. In their first assignment of error, the Bells argue that the trial court erred in finding Mr. Bell to be 30% at fault for the accident. They assert that the unrebutted testimony establishes that Mr. Bell had already backed out of his parking space and had control of the driving lane before Mr. Hembree exited his parking space, so Mr. Bell could not be comparatively at fault for the accident.

Mr. Hembree and Allstate respond that the trial court's allocation of fault in this matter was not manifestly erroneous. They assert that Mr. and Mrs. Bell's testimony regarding the accident was not unrebutted, as Mr. Hembree's testimony contradicted the Bells' assertion that they were stopped when the impact occurred. They further assert that the stipulation that the rear passenger side bumper of Mr. Hembree's truck contacted the front driver's side bumper of the Bell vehicle supports their contention that the Bell vehicle was angled to the right when the impact occurred.

Apportionment of fault is a factual question and as such, it is governed by the manifest error standard of review. *Raspanti v. Liberty Mutual Insurance Co.*, 05-623 (La. App. 5 Cir. 1/31/06), 922 So.2d 631, 633, *writ denied*, 06-476 (La. 5/5/06), 927 So.2d 314; *Watson v. State Farm Fire and Casualty Insurance Co.*, 469 So.2d 967, 974 (La. 1985). An appellate court must review the record in its entirety and determine if the trial court's factual findings were clearly wrong or manifestly erroneous. *Stobart v. State, Department of Transportation and Development*, 617 So.2d 880 (La. 1993); *Hall v. Folger Coffee Co.*, 03-1734 (La. 4/14/04), 874 So.2d 90, 98. When the trial court's findings are based on determinations regarding the credibility of witnesses, the manifest error standard

demands great deference to the fact finder's conclusions, because "only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989); *Palmisano v. Ohler*, 16-160 (La. App. 5 Cir. 12/7/16), 204 So.3d 1134, 1137-38.

In the present case, the trial court was presented with conflicting testimony and had to make credibility determinations in order to allocate fault for the accident. Mrs. Bell testified that Mr. Bell backed the car out of the angled parking space, stopped, and was about to move forward when she saw a white truck start backing out toward them. Mr. Bell, who indicated he has a bad memory, also testified that he had completely backed out of the parking spot and was putting the car in gear to go forward when the Hembree vehicle started backing up. However, Mr. Hembree testified that he checked his three rearview mirrors and his rear camera before backing up and was three-fourths of the way out of his parking space when he first saw a glimpse of something black and instantly applied his brakes. Mr. Hembree also stated that the Bell vehicle was slanted to the right as if trying to go into another parking space and that it either came from around the building or from off the street. No photographs of the vehicles were admitted at trial to show their location after the impact.

Where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous. *Henderson v. Nissan Motor Corporation*, 03-606 (La. 2/6/04), 869 So.2d 62, 69; *Rosell*, 549 So.2d at 844. After reviewing the entire record, an appellate court may not reverse reasonable findings of the trial court, even if the appellate court would have reached a different conclusion if sitting as the trier of fact. *Silverd v. Permanent General Ins. Co.*, 05-973 (La. 2/22/06), 922 So.2d 497, 500; *Stobart*, 617 So.2d at 882-83.

After considering the testimony and evidence, the trial court found that Mr. Bell was 30% at fault and that Mr. Hembree was 70% at fault. Based on the conflicting testimony, we cannot say that this apportionment of fault was manifestly erroneous or clearly wrong. Accordingly, this assignment of error is without merit.

In their second assignment of error, Mr. and Mrs. Bell contend that the trial court erred in assessing Cheryl Bell 30% fault because she was not operating a motor vehicle and was only a passenger at the time of the accident. Mr. Hembree and Allstate respond that the trial court apportioned 30% fault only to Mr. Bell, not Mrs. Bell.

The judgment provides:

> …this Court will apportion 70% of the fault to the Defendants, Danny Hembree and Allstate Insurance Company, and 30% of the fault to the Plaintiffs, Robert Bell and Cheryl Bell.

While the wording of the judgment assigns 30% fault to Mr. and Mrs. Bell and 70% to Mr. Hembree and Allstate, it appears that the trial court found Mr. Bell 30% at fault and Mr. Hembree 70% at fault. Clearly, the trial court did not apportion 30% fault to Mrs. Bell, as she was a guest passenger in the vehicle. Considering the trial court assessed Mr. Hembree 70% fault, there is only another 30% left to assess. It is implausible that the trial court assessed 30% each to Mr. and Mrs. Bell. This assignment of error has no merit.

In their third assignment of error, Mr. and Mrs. Bell argue that the trial court abused its discretion in awarding only $1,000 in combined general and special damages to Robert Bell and only $1,500 in combined general and special damages to Cheryl Bell. They argue that the damage awards are abusively low considering they both sustained soft tissue injuries resulting in pain and treatment for five months, and Mr. Bell also suffered a closed head injury. Mr. and Mrs. Bell contend that they should have been awarded the full amount of their medical

expenses, as well as general damages for five months of pain and suffering. The Bells assert that an award of $14,565 for Mrs. Bell's general and special damages and an award of $14,005 for Mr. Bell's general and special damages are appropriate under the circumstances of this case.

Mr. Hembree and Allstate respond that the trial court did not abuse its discretion in its damage awards, considering the lack of physical evidence, minor impact, and Mr. Bell's prior accident. They argue that Dr. Qureshi was not credible when he attributed all of Mr. Bell's pain to this accident, considering the medical records show he had unresolved pain from a prior accident shortly before this accident. They also argue that Mrs. Bell's testimony regarding the severity of her injuries was self-serving and not credible, noting that she was able to walk almost a mile every day after the accident.

Compensatory damages are divided into special and general damages. Special damages, such as medical expenses, can be determined with relative certainty. *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, 74. General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty, such as pain and suffering. *Id.* General and special damages may be awarded *in globo*, and such an award will not be set aside absent an abuse of discretion. *Johnson v. Philip*, 20-262 (La. App. 5 Cir. 3/17/21), 316 So.3d 144, 152, *writs denied*, 21-530, 21-576 (La. 6/22/21), 318 So.3d 707.

The trial court's assessment of the appropriate amount of damages, both special and general, is a determination of fact that is entitled to great deference on review. La. C.C. art. 2324.1; *Joseph v. Netherlands Ins. Co.*, 15-549 (La. App. 5 Cir. 2/24/16), 187 So.3d 517, 519; *Wainwright*, 774 So.2d at 74. Because the discretion vested in the trier of fact is so great, an appellate court should rarely disturb an award of damages on review. *Latulippe v. Braun,* 18-83 (La. App. 5 Cir. 8/10/18), 253 So.3d 820, 832-33; *Guillory v. Lee*, 09-75 (La. 6/29/09), 16

So.3d 1104, 1117. The role of an appellate court is to review the exercise of the trier of fact's discretion, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. *Ursin v. Russell*, 07-859 (La. App. 5 Cir. 2/6/08), 979 So.2d 554, 560.

In the present case, after considering the testimony and evidence, the trial court awarded Mrs. Bell $1,500 and Mr. Bell $1,000 *in globo* for general and special damages. The trial court apparently found that Mr. and Mrs. Bell suffered some injuries as a result of the accident, but not to the extent they claimed. After review, we cannot say the trial court abused its discretion in its award of damages.

The record shows that this was a minor accident. Mr. Hembree testified that he did not feel any impact and did not know the two vehicles made contact until he got out of the car. Mr. Hembree had no damage to his vehicle. While the Bells assert there was $800 of damage to their vehicle, neither the bill for repairs nor photographs of the vehicle were admitted.

Mr. and Mrs. Bell assert that as a result of this accident, Mrs. Bell incurred $2,065 in medical expenses, Mr. Bell incurred $1,505 in medical expenses, and they both endured five months of pain and suffering. While the itemized LPCC bills for their treatment after the accident were admitted into evidence, the medical records were not. To recover medical expenses from a defendant after an accident, a plaintiff must prove that, more probably than not, medical treatment was necessitated by the accident. *Mosbey v. Jefferson Parish Sheriff's Office,* 18-69 (La. App. 5 Cir. 6/27/18), 250 So.3d 1110, 1118.

With regard to Mrs. Bell's damages, Dr. Qureshi reviewed her medical records and testified that when Mrs. Bell went to the doctor approximately four weeks after the accident, she primarily complained of neck, shoulder, and back pain. Dr. Qureshi indicated that Mrs. Bell treated for approximately five months and he believed Mrs. Bell's injuries were more probably than not related to the

accident. However, the trial court apparently did not believe that all of the medical treatment she received was necessitated by the accident. While Mrs. Bell complained of serious neck and back pain, she also testified that she was able to walk almost a mile every day after the accident. The trial court could have considered this testimony when assessing Mrs. Bell's credibility.

With regard to Mr. Bell's damages, we note that he was involved in a motor vehicle accident in 2016 and treated at LPCC for seven months. On June 15, 2017, Mr. Bell rated his neck and lower back pain as eight of ten. The accident at issue herein occurred weeks later on August 1, 2017, and when Mr. Bell returned to LPCC for treatment on September 1, 2017, he was primarily treated again for neck and back pain. The record does not show Mr. Bell's neck and back pain had resolved prior to this accident. Although Dr. Qureshi testified that Mr. Bell's injuries were more probably than not related to the August 1, 2017 accident, the trial court apparently did not find this testimony to be credible.

Considering the testimony and evidence, we cannot say the trial court abused its discretion by awarding only $1,500 to Mrs. Bell and $1,000 to Mr. Bell for general and special damages. Accordingly, this assignment of error is without merit.

**DECREE**

For the foregoing reasons, we affirm the trial court's July 28, 2020 judgment.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 29, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-64

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
CATHERINE HILTON (APPELLANT)      RON A. AUSTIN (APPELLANT)      ANDREW DECOSTE (APPELLEE)
DAVID J. SCHEXNAYDRE (APPELLEE)

**MAILED**
NO ATTORNEYS WERE MAILED